Green, J.
delivered the opinion of the court,
Upon this indictment for betting on an election, no prose* cutor was marked. It was founded upon a presentment, made/ upon the evidence of Peter Shaver, a witness sent for by the grand jury, and sworn in court, and sent to them to testify of unlawful gaming.
The defendant pleaded in abatement that the presentment . was not found upon the knowledge of the grand jury, — but upon the information of a witness not of their body, sworn and sent to them. To this plea the attorney general demurred, but the court overruled the demurrer, and ordered that the defendant be discharged. From this judgment the attorney general appealed to this court.
By the act of 1824, c 5, § 2, grand juries are authorised to send for witnesses to give evidence of unlawful gaming, and such witnesses are required to give evidence of any offence that may be known to them, against the statutes to suppress gaming.
By the act of 1823, c25, § 2, betting on an election is declared to be a misdemeanor, and the persons guilty thereof are subject to punishment as in cases of betting on any games of hazard by the laws then in force.
The first question is, were the grand jury authorised to send for witnesses to give evidence against persons for betting on an election? The power of the grand jury to send for witnessess, is created by the act of 1824, above referred to, and is not made to extend beyond the case of gaming. If, .then, betting on an election be not gaming, they were uof *101 authorised to send for the witness Shaver, or to find a presentment upon his evidence.
Any contest, or course of action commenced and prosecuted in consequence of a bet or wager, and with a view to determine the bet or wager, upon the event of such contest or course of action, is gaming. Thus, in 1 Wilson’s Rep. part 2, p. 309, it is decided, that horse racing is gaming within the Statute of Anne, being within the words “other game or games. So also (same book, part 2, folio 36) in the case of Lynall vs. Longbothom, it is held, that a foot race against time is a game within the statute. But in that case it did not appear that Clark, the man who was alledged ,to have run against time, knew of the bet, or participated in it, or was running against time. “Clark might,” say the judges, “run for his diversion,” in which case he could not be said to play at the game called foot-race, and a bet upon .his running would not be within the statutes against gaming.
These cases make it very clear, that to constitute gaming, there must not only be a betting upon the determination of an event, but the course of action to bring about such event, must have been originated and commenced with a view to determine the bet.
This is not the case in elections, and therefore a bet upon .an election is not gaming within our statute.
It is probable that if two persons were to become candidates in consequence of a bet, the one would get more votes than the other. This would, within the authorities, constitute it a game, and then all other bets upon that election would be gaming. But that was not the case here. The contest which was determined by the election upon which ¡this bet was made, had no reference to the b.et, nor does it appear the candidates knew it was pending.
In this view of the case, we are of opinion the grand jury had no right to send for the witness, nor, after he was before them, to find this presentment on his evidence. By the ac.t of 1817, c 61, § 4, it is declared that indictments for gaming may be preferred without a prosecutor being marked thereon. But this act does not authorise this indictment to *102 be so prosecuted, because it has been shown that it was not an indictment for gaming.
As therefore this is not an indictment for gaming, and as the presentment is void, it is indispensable that a prosecutor should have been marked upon the indictment, and this not having been done, the demurrer to the plea of the defendant was properly overruled.
Affirm the judgment.